01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  STEPHANIE M. MORGAN,     )
              )   CASE NO. C12-0825-MJP-MAT
10     Plaintiff,      )
              )
11     v.         ) REPORT AND RECOMMENDATION
              )
12  KING COUNTY, et al.,     )
              )
13     Defendants.     )
_____ )

14

15  <u>INTRODUCTION</u>

16    Plaintiff Stephanie Morgan proceeds pro se in this civil rights action.  She brings

17  claims relating to her incarceration at King County Correctional Facility in Seattle on May 13,

18  2009, including deliberate indifference to medical needs and excessive force claims pursuant to

19  42 U.S.C. § 1983, and state-law claims of assault and battery, negligence, intentional infliction

20  of emotional distress, and negligent hiring, training, and supervision.  She names KCCF

21  Corrections Officer Michael Taylor, John and Jane Doe Corrections Officers, and King County

22  as defendants.

REPORT AND RECOMMENDATION
PAGE -1

01       Defendants filed a Motion for Summary Judgment.  (Dkt. 29.)  Plaintiff did not submit

02    a response to defendants' motion.[1]  The Court construes this failure to respond as an admission

03    that the motion has merit.  Local Civil Rule 7(b)(2).  The Court further finds, having

04    considered the motion and supporting documents, as well as the balance of the record in this

05    matter, that defendants' motion should be GRANTED and this case DISMISSED.

06    <center>BACKGROUND</center>

07       During the evening of May 12, 2009, plaintiff was involved in a domestic violence

08    incident with her mother, Laura Berry, and her sister, Elyse Berry.  (Dkt. 30, Exs. A & B.)

09    Plaintiff spoke to Laura Berry in an aggressive manner about an alleged abortion prior to

10    plaintiff's birth and grabbed her by the wrist.  (*Id*., Ex. A.)  Elyse Berry intervened, allowing

11    Laura to retreat to the upstairs of their home.  (*Id*., Exs. A & B.)  Elyse "socked" or "popped"

12    plaintiff in the face, pinned plaintiff to the ground, and wrapped her arms around plaintiff "like

13    a pretzel."  (*Id*., Ex. B.)  The police arrived, arrested plaintiff, and removed her from the

14    premises.  (*Id*.)  Plaintiff was booked into KCCF on a charge of Assault 4-DV at 1:05 a.m. on

15    May 13, 2009.  (Dkt. 32, ¶4, Ex. A; Dkt. 35, ¶12, Ex. A.)

16       Plaintiff alleges in her Amended Complaint that, after she arrived at KCCF, she

17    informed defendant Taylor and other corrections officers about her medical condition, Von

18    Willebrand's disease, which causes her to bruise easily if she is hit or attacked and can lead to

19    serious medical complications.  (Dkt. 19 at 5-6.)  She maintains Taylor refused her request "to

---

20       1 Although initially represented in this matter, plaintiff's counsel withdrew shortly before
defendants moved for summary judgment.  (*See* Dkts. 27-29.)  After the noting date for the summary

21    judgment motion passed, plaintiff requested an extension of time to retain new counsel.  (Dkt. 38.)  By
Order dated May 31, 2013, the Court granted plaintiff sixty days to retain new counsel and re-noted

22    defendants' motion for August 2, 2013.  (Dkt. 40.)  To date, new counsel for plaintiff has not appeared
and plaintiff has not responded to the motion for summary judgment.

01  see a doctor or even a nurse[,]" "denied any and all medical aid attention" to her, and, "yelled

02  profanities" at her.  (*Id*. at 6.)  Plaintiff further alleges that, after she continued to assert her

03  concerns and asked to make phone calls, Taylor came into her cell and attacked her, grabbing

04  her and throwing her to the concrete floor, and forcing "his knee into her neck while she lay

05  immobilized on the ground."  (*Id*.)  She contends three other guards, identified as John and

06  Jane Does, joined Taylor in restraining her, and that Taylor grabbed her by her hair, causing her

07  head to hit the floor.  (*Id*.)  Plaintiff avers that, following the attack, she was placed in a cell in

08  isolation, where she did not receive any medical attention and was not allowed to make a phone

09  call.  (*Id*. at 6-7.)

10      Plaintiff states she was placed on a bus to the Regional Justice Center (RJC) in Kent at

11  or around 8:00 a.m. on May 13, 2009, that a judge ordered her released later that morning, and

12  that she immediately proceeded to the emergency room at St. Francis Hospital in Federal Way,

13  Washington.  (*Id*. at 7.)  She contends she was diagnosed as having a scalp hematoma,

14  contusions to her chest, right hand, and right wrist, blunt force trauma head injury,

15  coagulopathy, and a possible carpal bone injury, and that she received a thumb splint and

16  Vicodin as treatment.  (*Id*.)

17      Plaintiff maintains she suffered further physical, mental, and emotional pain following

18  her release.  She attests, in particular, to shoulder pain, with a prior shoulder condition

19  exacerbated by the attack, and to nightmares, sleep disruption, and anxiety, with the latter

20  conditions compelling her to seek mental health counseling and treatment, including the

21  prescription of an anti-depressant.  (*Id*. at 7-8.)

22      Defendants refute plaintiff's contentions and provide further and contrary information

REPORT AND RECOMMENDATION
PAGE -3

to that alleged by plaintiff.  Corrections Officer Brent Covington was assigned to Intake and Release (ITR) at KCCF on the night of May 12th to May 13th, 2009.  (Dkt. 32, ¶3.)  He conducted deferral screening for arriving inmates, focusing on whether the inmate had any medical issues preventing their booking.  (*Id*.)  The deferral screening form Covington completed for plaintiff, at 1:05 a.m. on May 13, 2009, describes her as "very mouthy" presenting with an injury to her right finger, and reflects her report she suffers from a bleeding disorder.  (*Id*., ¶¶4, 8 and Ex. A.)  Covington referred plaintiff for a further intake assessment by a Jail Health Service (JHS) Nurse.  (*Id*., ¶9.)

At some point between 1:05 a.m. and 2:01 a.m., JHS Nurse Jon Richner saw plaintiff for an enhanced intake assessment.  (Dkt. 33, ¶¶2, 8 and Ex. A.)[2]  The electronic medical record generated by Richner regarding his encounter with plaintiff describes her as "[a]rgumentative and uncooperative" and "[y]elling in full sentences."  (*Id*., Ex. A.)  It includes the observation of "swelling with discoloration" on one of plaintiff's right hand fingers, plaintiff's refusal to let Richner palpate the finger, and plaintiff's report of "getting her finger broke [sic] yesterday while fighting with her sister."  (*Id*.)  Plaintiff also reported a history of a bleeding disorder and asthma.  (*Id*.)  Richner referred plaintiff for follow-up with a JHS health care provider as "[Priority] 1."  (*Id*., ¶10 and Ex. A.)

Corrections Officer Lyle Bremmeyer, who arrived for duty at ITR at 10:20 p.m. on May 12, 2009 and departed at 6:30 a.m. on May 13, 2009, attests he was responsible for noting security checks and other unusual occurrences in a "Log Book." (Dkt. 31, ¶¶3-4.)  Bremmeyer

---

2 Because Richner was on military duty at the time of the summary judgment filing, Deborah Nanson, a Personnel Health Services Supervisor in the JHS division of KCCF and a supervisor of Richner, provided the above-described information.  (*See* Dkt. 33, ¶¶2-4.)

REPORT AND RECOMMENDATION
PAGE -4

01  describes the ITR Log Book as containing a single entry related to plaintiff as to an incident

02  occurring at 1:45 a.m. on May 13, 2009.  (*Id*., ¶8.)  The entry states: "I/m Morgan was

03  attempting to break the phone in side cell #5 and screaming obscenities towards staff.  She was

04  then escorted to side cell #8."  (*Id*., ¶8 and Ex. A.)  Bremmeyer notes that side cell number

05  eight is a padded cell, that there is no entry in the Log Book indicating a use-of-force incident

06  involving any corrections officers and plaintiff, and that an "escort is not considered a

07  use-of-force."  (*Id*., ¶7.)

08          Defendant Taylor is currently a Corrections Sergeant for the King County Department

09  of Adult and Juvenile Detention (DAJD) and assigned to the DAJD Internal Investigation Unit.

10  (Dkt. 35, ¶¶2-3.)  Taylor was working as the Sergeant supervising ITR at KCCF on the dates in

11  question.  (*Id*., ¶3.)  Taylor attests that, while he has no independent recollection of plaintiff,

12  he would have, as part of his usual practice, been present with one or two other corrections

13  officers when plaintiff was escorted to a padded cell, and that escorting an inmate is not

14  considered a use-of-force under DAJD policy.  (*Id*., ¶5.)  He denies plaintiff's allegations and

15  observes that, had there been a use-of-force incident, he would have documented the incident

16  with a report and it would have been noted in the ITR Log Book.  (*Id*., ¶¶6, 8.)  Taylor

17  confirms plaintiff left KCCF in the early morning of May 13, 2009, was assigned to an RJC

18  housing location at 9:42 a.m., and was released from custody at 4:38 p.m.  (*Id*., ¶12 and Ex. A.)

19                                      DISCUSSION

20          Summary judgment is appropriate when a "movant shows that there is no genuine

21  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

22  R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the

REPORT AND RECOMMENDATION
PAGE -5

01  nonmoving party fails to make a sufficient showing on an essential element of his case with

02  respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

03  (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.

04  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

05        The central issue is "whether the evidence presents a sufficient disagreement to require

06  submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

07  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The moving party bears the

08  initial burden of showing the district court "that there is an absence of evidence to support the

09  nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  The moving party can carry its

10  initial burden by producing affirmative evidence that negates an essential element of the

11  nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed

12  to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

13  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party to

14  establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

15        In supporting a factual position, a party must "cit[e] to particular parts of materials in

16  the record . . .; or show[] that the materials cited do not establish the absence or presence of a

17  genuine dispute, or that an adverse party cannot produce admissible evidence to support the

18  fact."  Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that

19  there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475

20  U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact.  . . . Only

21  disputes over facts that might affect the outcome of the suit under the governing law will

22  properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48 (emphasis

REPORT AND RECOMMENDATION
PAGE -6

in original).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

As stated above, plaintiff brings forth both federal constitutional and state-law claims relating to her incarceration at KCCF in May 2009.   For the reasons sets forth below, the Court concludes plaintiff's federal claims should be dismissed on summary judgment, and that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

A.      Deliberate Indifference to Medical Needs

The Eighth Amendment's proscription against cruel and unusual punishment applies to pretrial detainees, such as plaintiff, through the Due Process Clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).   The Court applies a "deliberate indifference" standard in considering claims relating to medical care.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010).   An inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle,* 429 U.S. at 106.

A prison official may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment."  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and internal

REPORT AND RECOMMENDATION
PAGE -7

01 quotation marks omitted).   However, a prison official may be held liable "only if he knows that

02 inmates face a substantial risk of serious harm and disregards that risk by failing to take

03 reasonable measures to abate it."   *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).   "A 'serious'

04 medical need exists if the failure to treat a prisoner's condition could result in further significant

05 injury or the 'unnecessary and wanton infliction of pain'."   *McGuckin v. Smith*, 974 F.2d 1050,

06 1059 (1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v.*

07 *Miller*, 104 F.3d 1133 (9th Cir. 1997).

08        The indifference to medical needs must be substantial; a constitutional violation is not

09 established by negligence or "an inadvertent failure to provide adequate medical care[.]"

10 *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).   Nor does a

11 difference of opinion between an inmate and medical authorities regarding proper medical

12 treatment give rise to a §1983 claim.   *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337,

13 1344 (9th Cir. 1981).   Also, a mere delay of treatment, standing alone, does not suffice to state

14 a claim of deliberate indifference; the inmate must show the delay led to further injury.

15 *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (1985) (citing *Estelle*, 429

16 U.S. at 106).   *Accord Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1059-60.

17        In this case, contrary to plaintiff's contention that she was deprived of any and all

18 medical care during her incarceration, the record establishes she was both screened for medical

19 issues during booking and examined by a nurse shortly thereafter.   (Dkts. 32 & 33.)   The

20 KCCF medical record reflects the observation of pre-existing injuries stemming from a fight

21 with plaintiff's sister, that plaintiff refused further examination of her finger, and no indication

22 of other emergent medical issues requiring immediate attention.   (Dkt. 33, ¶¶8-9 and Ex. A.)

REPORT AND RECOMMENDATION
PAGE -8

01 That record also shows plaintiff was referred for follow-up. (*Id*.) She was, however,

02 removed from KCCF within six to seven hours of the examination, and from the custody of

03 King County some seven and a half hours after arriving at the RJC. (*See* Dkt. 35, ¶¶12-13.)

04 As defendants argue, the evidence supports the conclusion plaintiff was appropriately assessed

05 and subsequently released before any scheduled follow-up could occur.

06        Defendants also present a relevant declaration from a medical expert. He describes the

07 May 13, 2009 records from St. Francis Hospital as documenting injuries consistent with

08 plaintiff having had a physical altercation with her sister, and, outside of treatment for her

09 finger, reflecting no acute medical issues. (Dkt. 34, ¶8.) The expert also notes the absence of

10 any complaint of shoulder pain or injury, that other records establish a pre-existing shoulder

11 injury attributed to a work-place incident, and that, during an October 2009 visit with a shoulder

12 specialist, plaintiff did not report any shoulder injury sustained at KCCF. (*Id*., ¶¶6, 8.)

13        Plaintiff fails to provide support for a conclusion that defendants knew of a substantial

14 risk of serious harm and disregarded that risk by failing to take reasonable measures in

15 response. The record, instead, contradicts any contention defendants denied, delayed, or

16 intentionally interfered with medical treatment associated with serious medical needs, or that

17 any delay in the follow-up treatment plaintiff received after her release resulted in further

18 injury. Plaintiff's deliberate indifference claim should, as such, be dismissed.

19 B.   <u>Excessive Force</u>

20        Plaintiff also alleges excessive force. Again, while plaintiff's claims would arise under

21 the Fourteenth Amendment rather than the Eighth Amendment given her status as a pretrial

22 detainee at the time of the incident, the Eighth Amendment standard is applied. *Afeworki v.*

REPORT AND RECOMMENDATION
PAGE -9

01 *Thompson*, No. C06-628P, 2007 U.S. Dist. LEXIS 42817 at *20 n.2 (W.D. Wash. June 13,

02 2007).

03       The "core judicial inquiry" in an excessive force claim is not what degree of injury the

04 inmate suffered, but rather "whether force was applied in a good-faith effort to maintain or

05 restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503

06 U.S. 1, 6-10 (1992).   In formulating this standard, the United States Supreme Court observed

07 that not "every malevolent touch by a prison guard gives rise to a federal cause of action."   *Id.*

08 at 9.   Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment

09 necessarily excludes from constitutional recognition *de minimis* uses of physical force,

10 provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at

11 9-10 (quoted sources omitted).   Courts may consider several different factors in evaluating a

12 correctional officer's use of force, including: (1) the extent of injury suffered; (2) the need for

13 use of force; (3) the relationship between the need for force and the amount of force used; (4)

14 the threat "'reasonably perceived by the responsible officials'"; and (5) "'any efforts made to

15 temper the severity of a forceful response.'"   *Id.* at 7 (quoting *Whitley v. Albers*, 475 U.S. 312,

16 321 (1986)).

17       Plaintiff here fails, at a basic level, to provide support for a contention she was subjected

18 to any use of force by defendants, excessive or otherwise.   Taylor denies, by declaration, any

19 use of force, and documentation associated with the night in question does not reflect any

20 use-of-force incident involving plaintiff.   (Dkts. 31 and 35.)   That documentation, on the

21 other hand, reflects that plaintiff attempted to break a phone in a cell, screamed obscenities at

22 staff, and was subsequently escorted to a padded cell.   (Dkt. 31, ¶¶ 8 and Ex. A.)   The mere

REPORT AND RECOMMENDATION
PAGE -10

01  fact that an escort occurred does not suffice to support an allegation of excessive force.   Nor

02  can this action be deemed unreasonable under the circumstances.   *Cf. Bell*, 441 U.S. at 546

03  ("[M]aintaining institutional security and preserving internal order and discipline are essential

04  goals that may require limitation or retraction of the retained constitutional rights of both

05  convicted prisoners and pretrial detainees.")

06          The evidence further shows plaintiff was involved in a physical altercation with her

07  sister prior to her arrest, leading to one or more injuries.   Indeed, plaintiff's sister admits she

08  "socked" or "popped" plaintiff in the face, pinned plaintiff to the ground, and wrapped her arms

09  around plaintiff "like a pretzel." (Dkt. 30, Ex. B.)   The evidence in the record, therefore,

10  undercuts plaintiff's allegation that she was subjected to excessive force by Taylor and suffered

11  injuries stemming from that application of force.

12          Plaintiff's allegation is further undercut through consideration of the injuries she alleges

13  resulted from the use of excessive force.   She alleges the attack exacerbated a prior shoulder

14  injury and a previously diagnosed Post Traumatic Stress Disorder.   (Dkt. 30, Ex. C at 19;

15  *accord* Dkt. 19 at 8.)   Yet, as defendants' observe, plaintiff fails to proffer any expert

16  testimony or other evidence in support of her allegation.   Defendants, in contrast, submit an

17  expert medical opinion that plaintiff did not suffer any physical injury or emergent medical

18  condition, or any exacerbation of pre-existing injuries or conditions, during her incarceration at

19  KCCF.   (Dkt. 34, ¶¶5, 9.)   As noted above, the expert observes that plaintiff did not complain

20  of shoulder pain or injury when she appeared for treatment at St. Francis Hospital following her

21  release, and did not report a shoulder injury sustained at KCCF in an October 2009 medical

22  appointment with a specialist.   (*Id.*, ¶6.)   Another expert attests to his opinion plaintiff's

REPORT AND RECOMMENDATION
PAGE -11

01   experiences at KCCF did not cause or exacerbate any mental health condition, noting, in

02   particular, that plaintiff's counseling records following her May 2009 detention indicate her

03   report of multiple life stressors, without any reference to an incident at a jail.   (Dkt. 36, ¶¶4-5.)

04          In sum, there is an absence of evidence supporting plaintiff's claim of excessive force

05   and her conclusory allegations fail to create a triable issue of fact.   *See Hernandez*, 343 F.3d at

06   1112.   *See also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner

07   confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

08   while in custody without a prior showing of physical injury.")   As such, plaintiff's excessive

09   force claim should also be dismissed.

10   C.      State Law Claims

11          Plaintiff includes a variety of state-law claims in her complaint, including assault and

12   battery, negligence, intentional infliction of emotional distress, and negligent hiring, training,

13   and supervision.[3]   Federal courts have supplemental jurisdiction to consider state-law claims

14   when they are "so related" to the federal claims that they "form part of the same case or

15   controversy[.]"   28 U.S.C. § 1367(a).   The exercise of supplemental jurisdiction is designed to

16   promote "judicial economy, convenience, fairness, and comity[.]"   *Carnegie-Mellon*

17   *University v. Cohill*, 484 U.S. 343, 350 (1988).   However, when all federal claims have been

18   dismissed, the interests promoted by supplemental jurisdiction are no longer present, and a

19   court may decline to exercise jurisdiction over state-law claims.   28 U.S.C. § 1367(c);

20   *Carnegie-Mellon*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are

21

22          3 Plaintiff filed a state court case prior to instituting the current action, but later agreed to
consolidate the actions in this Court.   (*See* Dkts. 15, 19 & 22).

REPORT AND RECOMMENDATION
PAGE -12

01  eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

02  doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to

03  exercise jurisdiction over the remaining state-law claims.")   Because the Court recommends

04  dismissal of plaintiff's federal claims, it further recommends the Court decline to exercise

05  supplemental jurisdiction and dismiss plaintiff's state-law claims without prejudice.

06                                              <u>CONCLUSION</u>

07          In sum, the Court finds no genuine disputes of material facts and defendants entitled to

08  judgment as a matter of law in relation to plaintiff's federal claims.[4]   Accordingly, the Court

09  recommends defendants' Motion for Summary Judgment (Dkt. 29) be GRANTED, and

10  plaintiff's federal claims be DISMISSED with prejudice.   The Court also recommends

11  declining to exercise supplemental jurisdiction over plaintiff's state-law claims and dismissing

12  those claims without prejudice.

13          DATED this <u>27th</u> day of September, 2013.

15                                                          _____
                                                            Mary Alice Theiler
16                                                          Chief United States Magistrate Judge

18  _____

19      4 Defendants also argue plaintiff's claims against King County, as based on negligent hiring,
    training, and supervision, should be dismissed, as should plaintiff's claims against the unidentified John
20  and Jane Doe defendants.   Because plaintiff's claims of deliberate indifference and excessive force are
    subject to dismissal for the reasons set forth above, there is no basis for holding King County or any
21  other defendants liable in relation to those claims.   Also, because service could not be effectuated on
    any of the John or Jane Doe defendants, they are not considered parties to this action.   Finally, given the
22  grounds for dismissal discussed above, the Court does not find it necessary to address defendants'
    argument as to qualified immunity.

REPORT AND RECOMMENDATION
PAGE -13